UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SOONTHAI DOUANGDALA,

                              Petitioner,

           v.

PAMELA BONDI et al.,

                              Respondents.

CASE NO. 2:26-cv-00963-DGE

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)

       Before the Court is Petitioner's petition for writ of habeas corpus and second motion for temporary restraining order ("TRO").  (Dkt. Nos. 1, 7.)  For the following reasons, the Court GRANTS the petition.

                    I.    FACTUAL AND PROCEDURAL BACKGROUND

A.  Factual Background

       Petitioner was born in a refugee camp in Thailand in 1980 after his family fled Laos in the aftermath of the Vietnam War.  (Dkt. No. 1 at 1–2.)  Petitioner was admitted into the United States in 1981 as a refugee when he was less than a year old.  (*Id.* at 4; Dkt. No. 15 at 1.)  On

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 1

September 18, 1985, Petitioner adjusted status to lawful permanent resident, applicable as of his date of admission. (Dkt. No. 15 at 2.) Petitioner's parents, siblings, and children are United States citizens, and one of his brothers is a lawful permanent resident. (Dkt. No. 1 at 4.) Petitioner has a daughter with Down Syndrome "with an array of significant health problems, who he cares for physically and supports financially." (*Id.*) The child's mother has faced significant financial hardship without Petitioner's support. (*Id.*)

On July 11, 1997, Petitioner was convicted of robbery in the first degree with a deadly weapon and sentenced to 31 months' incarceration. (Dkt. No. 15 at 2.) On September 26, 1997, Petitioner was issued a Notice to Appear, charging him as removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) because he had been convicted of an aggravated felony after being admitted to the United States. (Dkt. Nos. 14-1 at 2; 15 at 2.) On May 6, 1998, an immigration judge entered a final order of removal against Petitioner to Thailand. (Dkt. Nos. 1 at 4–5; 14-2 at 5; 14-3 at 2; 15 at 2.) Petitioned appealed to the Board of Immigration Appeals ("BIA"), who dismissed the appeal on June 28, 1999. (Dkt. Nos. 14-4 at 2–4; 15 at 2.)

On June 9, 2000, Petitioner was released from immigration custody on an Order of Supervision. (Dkt. Nos. 14-5 at 2–3; 15 at 2.) Between November 2001 and May 2006, Petitioner was convicted of several criminal offenses. (Dkt. Nos. 14-6 at 3; 15 at 2.) On February 9, 2009, Petitioner was released from state custody and taken into custody by Immigration and Customs Enforcement ("ICE"), who subsequently revoked his Order of Supervision. (Dkt. Nos. 14-7 at 2–3; 15 at 2.) On March 4, 2009, Petitioner was again released on an Order of Supervision.[1] (Dkt. Nos. 14-8 at 2–4; 15 at 2.)

---

[1] The 2009 Order of Supervision contains a handwritten notation indicating Petitioner was "re-released on [Order of Supervision] 3/20/13." (*See* Dkt. No. 14-8 at 2.) Enforcement and

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 2

On December 11, 2025, ERO headquarters submitted a travel document request to the Laotian attaché and received a Laotian travel document on January 27, 2026.  (Dkt. No. 15 at 3; *see also* Dkt. No. 14-13 at 2 (travel document).)

On March 1, 2026, the Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest.  (Dkt. No. 14-9 at 2.)  Petitioner reported for an ICE check-in the following day, where he was detained and transferred to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC").[2]  (Dkt. Nos. 1 at 4; 14-11 at 3; 15 at 3.)  Petitioner alleges ICE revoked his Order of Supervision without notice or an opportunity to respond.  (Dkt. No. 1 at 5.)  Respondents provided an undated Notice of Revocation of Release indicating that Petitioner's 2009 Order of Supervision was revoked pursuant to 8 C.F.R. § 241.4(l) because "[t]he purposes of release have been served[,]" and "ICE has obtained a travel document and scheduled your removal to take place no later than April 7, 2026."[3]  (Dkt. No. 14-10 at 2.)  Documentation further indicates Petitioner received an initial informal interview after being detained—though Petitioner did not provide any response.  (*See* Dkt. No. 14-12 at 2.)

---

Removal Operations ("ERO") Officer Andre Ouk attests "[i]n 2013, Petitioner was re-issued the 2009 [Order of Supervision] documents during or following his detention with King County on a prior criminal charge."  (Dkt. No. 15 at 2–3.)

[2] The March 2, 2026 I-213 Form identifies the "Disposition: Bag and Baggage."  (Dkt. No. 14-11 at 2.)  Respondents indicate Bag and Baggage is "not a formal policy or standardized procedure[,]" but instead is "an internal shorthand used by ERO personnel to refer to individuals who are subject to a final order of removal and who are being processed for imminent removal."  (Dkt. No. 13 at 7 n.7.)  "The use of this colloquial terminology does not reflect the existence of any separate policy or practice, nor does it alter Federal Respondents' obligations under 8 C.F.R. § 241.13(i)."  (*Id.*)

[3] Respondents acknowledge the Notice of Revocation of Release is undated and that there is no proof of service on the Notice itself.  (Dkt. No. 13 at 7 n.8.)  However, Respondents contend "ICE records reflect Petitioner was properly served with the notice of [Order of Supervision] revocation" on March 2, 2026.  (*Id.*)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 3

ERO served Petitioner a Notice of Intent to remove to Laos on March 21, 2026, indicating intended removal in April 2026.  (Dkt. No. 15 at 4.)  On April 1, 2026, Petitioner was served a third country removal notice indicating removal to Laos.  (Dkt. No. 15 at 3.)  According to Officer Ouk, Petitioner did not claim fear of removal to Laos.[4]  (Dkt. No. 15 at 3.)

**B.  Procedural Background**

On March 20, 2026, Petitioner filed his petition for writ of habeas corpus and a motion for TRO.  (Dkt. Nos. 1, 2.)  The Court (King, J.) denied the motion for TRO as moot given the issuance of the scheduling order (*see* Dkt. No. 3).  (Dkt. No. 4.)  On March 2, 2026, Petitioner filed a second motion for TRO.  (Dkt. No. 7.)  This Court provisionally granted the motion for TRO pending Respondents' response to the motion.  (Dkt. No. 8.)  The Parties filed a stipulated motion for TRO briefing schedule, which followed the briefing schedule of the pending habeas petition, and the Court granted the stipulated motion.  (Dkt. Nos. 9, 10.)  Respondents filed their return on April 3, 2026.  (Dkt. No. 13.)  Petitioner filed his traverse on April 8, 2026.  (Dkt. Nos. 16, 17.)  The Court held oral argument on April 23, 2026.  (Dkt. No. 20.)

At oral argument, counsel for Respondents advised the Court that on April 9, 2026 they directed ICE to refer Petitioner for a credible fear determination, and on April 15, 2026, United States Citizenship and Immigration Services ("USCIS") interviewed Petitioner regarding his fear of removal to Laos.  At the time of the hearing, USCIS had not yet made a determination.

---

[4] There is conflicting evidence as to whether Petitioner has claimed fear of traveling to Laos. Though Officer Ouk attests Petitioner did not claim fear of removal to Laos, Petitioner asserts that he requested a credible fear determination in March 2026 regarding his fear of being removed to Laos "but was later informed that he did not qualify for said interview" (Dkt. No. 16 at 3).  The Court need not decide this factual dispute, because USCIS interviewed Petitioner on April 15, 2026 regarding his fear of removal to Laos.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 4

## II.    JURISDICTION

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241. "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–1212 (9th Cir. 2011)).

## III.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The detention, release, and removal of noncitizens subject to a final order of removal is governed by INA § 241, codified at 8 U.S.C. § 1231.  The requirements of the statute take effect once a final order of removal of a noncitizen is entered by an immigration judge.  The first 90-day period following the entry of the order of final removal is called the "removal period."  8 U.S.C. § 1231(a)(1)(A).  Detention is mandatory during that period.  *Id.* § 1231(a)(2).  However, once the 90-day removal period has expired, continued detention is at the discretion of the

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 5

Attorney General. *Id.* § 1231(a)(6). There is no statutory limit on the Attorney General's discretion to detain noncitizens beyond the 90-day period, but in *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. As the *Zadvydas* Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* Court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

## IV. ANALYSIS

Petitioner argues that due process bars removal to a third country without notice and an opportunity to be heard.[5] (Dkt. No. 16 at 8.) He further contends that his continued detention

---

[5] Petitioner raised this argument for the first time in his traverse. "It is well-settled . . . that a habeas petitioner cannot amend his petition—much less introduce wholly new claims—in his reply brief." *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025) (emphasis added), *report and recommendation adopted in part, rejected in part*, No. 24-CV-10053 (VSB) (BCM), 2026 WL 686499 (S.D.N.Y. Mar. 11, 2026); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Calderon v. Noem*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025). The Court held a hearing on April 23, 2026 to discuss the issue of third country removal. The Court noted that although the issue was first raised in the traverse, in part because Respondents identified in their response that they had a travel document to a third country and were seeking to remove Petitioner based on the travel document, judicial economy weighed in favor of allowing Respondents to file a supplemental response rather than have Petitioner file an amended petition and then have Respondents file a response. Respondent declined to file a supplemental response, indicating they instead would rely on arguments raised in their briefing in *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025). The Court, in its discretion, concludes Respondents had an opportunity

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 6

violates due process because there is no significant likelihood of removal in the reasonably foreseeable future.  (Dkt. No. 1 at 7.)

### A. Third Country Removal

Where the government cannot remove a noncitizen to the country specified in their removal order,[6] it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause.[7]  *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019); *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings.").  To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country.  *Aden*, 409 F. Supp. 3d at 1009.  The government has an "*affirmative obligation* to make a determination regarding a noncitizen's claim of fear before deporting him."  *Aden*, 409 F. Supp. 3d at 1010 (emphasis added); 8 U.S.C. § 1231(b)(3)(A).

The requirements set forth in *Aden* "flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country."  *Nguyen,* 796 F. Supp. 3d at

---

to address Petitioner's argument regarding third country removal and that review of the third country removal issue is properly before the Court.

[6] Counsel for Respondents informed the Court that Thailand previously stated it would not accept Petitioner.

[7] Counsel for Respondents indicated Respondents relied on the operative DHS memoranda on third country removals as the bases for Petitioner's removal.  However, as this Court and numerous others have consistently held, the procedures set forth in the July 9, 2025 ICE policy memo fall well short of what the *Aden* court and others in this district have found due process and the INA require.  *See Nguyen*, 796 F. Supp. 3d at 726 (finding that ICE's current third country removal policy "contravenes Ninth Circuit law" as "[i]t would be impossible to comply both with Ninth Circuit precedent and the policy").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 7

727. "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citing *Kossov v. I.N.S.*, 132 F.3d 405, 408–409 (9th Cir. 1998)); *see also Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) (citing *Andriasian*, 180 F.3d at 1041); *El Himri v. Ashcroft,* 378 F.3d 932, 938 (9th Cir. 2004).

Numerous courts in the Ninth Circuit have found if a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *See Nguyen,* 796 F. Supp. 3d at 727; *Aden*, 409 F. Supp. 3d at 1010 ("ICE's attempt to remove Petitioner to Somalia without notice, much less an opportunity to be heard, violated petitioner's due process rights."); *A.A.M. v. Andrews,* No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *11 (E.D. Cal. Dec. 4, 2025) ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator."); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025); *Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sep. 18, 2025) ("On balance, on this record, the Court finds that there is a sufficiently imminent risk that Petitioner will be subjected to improper process in

relation to any third country removal to warrant imposition of an injunction requiring additional process.").

At the April 23, 2026 hearing, counsel for Respondents advised the Court that Petitioner had been referred to USCIS for a credible fear determination regarding removal to Laos, and the parties were awaiting USCIS's findings. However, as discussed in *Aden*, "both the due process clause and the governing statute *place the burden on the government*—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims[;]" "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—*is not an adequate substitute* for the process that is due in these circumstances."[8] *Aden*, 409 F. Supp. 3d at 1010 (emphasis added). This is exactly what Petitioner argues is being denied to him. (Dkt. No. 16 at 8.) Because Petitioner's order of removal designates Thailand only, he has not previously had the opportunity to present a fear-based claim for relief from removal to any country other than Thailand. By referring Petitioner for a credible fear determination, Respondents have provided Petitioner with only a *possibility* that his removal proceedings will be reopened as merely participating in a credible fear interview does not guarantee removal proceedings will be reopened. Accordingly, Respondents must go a step further and affirmatively reopen Petitioner's removal proceedings to provide him a meaningful opportunity to be heard on asylum and withholding claims.

---

[8] Respondents' argument that Petitioner had the ability to file a motion to reopen removal proceedings as early as April 1, 2026 is thus foreclosed by *Aden*.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 9

**B. There Is No Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner also argues his continued detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future.  (Dkt. No. 1 at 7.)

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001).  Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).  *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'"  *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (quoting *Zadvydas*, 533 U.S. at 701).  If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion."  *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  First, Petitioner has already been detained for more than six months.  Petitioner's order of removal became final on June 28, 1999 when the BIA dismissed his appeal, and he remained in detention until he was

released on an Order of Supervision on June 9, 2000.  (Dkt. Nos. 14-4 at 2;14-5 at 2.)  Petitioner was previously detained for almost a year, separate from his current detention, making his detention presumptively unreasonable under *Zadvydas*, 533 U.S. at 701.  *See Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.").  Respondents concede this point in their briefing, acknowledging that Petitioner's "presumptively reasonable period of post-order detention ended on December 9, 1999."  (Dkt. No. 13 at 9.)

Second, Petitioner has shown his removal is not likely in the reasonably foreseeable future.  At present, he has an order of removal to Thailand *only*.  Respondents have provided proof of a travel document to Laos, but Petitioner may not be removed to Laos at this point.[9]  Thus, there is no evidence showing a significant likelihood of removal in the reasonably foreseeable future.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.  However, Respondents rely solely on the Laotian travel document as proof of removal in the reasonably foreseeable future.  (*See* Dkt. No. 13 at 9.)  For the reasons previously addressed, Petitioner cannot be removed there unless he has an opportunity to make a fear-based claim regarding removal to Laos in reopened removal proceedings.

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*.  *See* 533 U.S. at 699–700

---

[9] Furthermore, counsel for Respondents acknowledged at the April 23, 2026 hearing that the Laotian travel document has since expired.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 11

("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful, and his release is appropriate. *See Yuksek v. Bondi*, No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364 (W.D. Wash. Jan. 8, 2026) (allowing release upon a finding that removal was not reasonably foreseeable).

## V.    CONCLUSION

The Court GRANTS Petitioner's petition for writ of habeas corpus.[10] (Dkt. No. 1.) The Court ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1)** day of this order and return him to his previous conditions of release.

2. Petitioner SHALL NOT be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. § 241.13.

3. Should Responds seek to remove Petitioner to a country other than Thailand, Respondents SHALL move to reopen Petitioner's removal proceedings to allow Petitioner to present a full claim for relief under 8 U.S.C. § 1231(b)(3).

4. Within **TWENTY-FOUR (24)** hours of this Order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

5. Petitioner requested attorney fees and costs under the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment. *See id.*

---

[10] Because the Court grants Petitioner's habeas petition and orders his release, the Court DENIES as moot the motion for TRO (Dkt. No. 7).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 12

§ 2412(d)(1)(B).  Accordingly, Petitioner may file a motion supporting such request no later than Thursday, July 23, 2026.

The Clerk is directed to calendar this event and close the case.

Dated this 24th day of April, 2026.



David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7)- 13